**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

DAVID FREIFELD, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

ASTRO AI CORPORATION; ASTRO AI INC. LLC,

*Defendant*.

**Case No.: 2 5 - c v - 0 7 1 2 5**

**CLASS ACTION**
**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, David Freifeld ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Complaint against Defendant, Astro AI Corporation and Astro AI Inc. LLC ("Astro", "Astro Ai", or collectively "Defendant"), and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit as an individual who purchased Defendant Astro Ai's 4-Liter/6-can mini-fridge (hereinafter "Products", or "mini-fridge") for normal household use.

2. The product was sold in on Amazon along with the corporate website[1].

3. As such, these Astro Ai mini-fridges are distributed, marketed, and sold by Astro

[1] https://www.cpsc.gov/Recalls/2025/AstroAI-Recalls-Minifridges-Due-to-Fire-and-Burn-Hazards-Two-Fires-Resulted-in-More-Than-360000-in-Reported-Property-Damages

AI Corporation to consumers across the United States.

4. Unfortunately, the Products are defective because it is susceptible of having a switch within its wiring system short circuit causing the mini-fridge to overheat during its use posing a burn hazard and fire risk to its users.

5. The Recall applies to 249,000 units that were manufactured between June 2019-June 2022, at an approximate price of $40.[2]

6. The Product is defective because a switch for the mini-fridge can short circuit and cause fire or burn hazards.

7. Other manufacturers formulate, produce, and sell non-defective mini-fridges with production methods that do not cause the Products to overheat and potentially catch fire, which is evidence that the fire risk inherent with Defendant's Products is demonstrably avoidable.

8. Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated, designed, and manufactured.

9. Plaintiff purchased the Product, while lacking the knowledge that the Product could have its electrical switches and/or wiring system overheat creating a fire risk and exposing users to a possible burn hazard.

10. All consumers who purchased the worthless and dangerous Products have suffered losses.

11. As a result of the above losses, Plaintiff seeks damages and equitable remedies on behalf of himself and the putative class.

---

[2] https://www.cpsc.gov/Recalls/2025/AstroAI-Recalls-Minifridges-Due-to-Fire-and-Burn-Hazards-Two-Fires-Resulted-in-More-Than-360000-in-Reported-Property-Damages







## PARTIES

12. Plaintiff David Freifeld is a resident and citizen of Vernon Hills, Illinois. Vernon Hills is located in Lake County.

13. Defendant Astro AI Corporation is a Chinese Company with its Principal Place of Business located at 7423 Doig Drive, Garden Grove California 92841.

14. Defendant Astro AI Inc., LLC. is a US corporation organized and existing under

the laws of the State of Delaware. The Defendant's Registered Agent for service of process is located at 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19808. Agents and Corporations Inc. is its Registered Agent.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d).

16. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given that the Defendant has conducted substantial business in this judicial district and in the State of Illinois by selling its products online to consumers across the United States.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events, giving rise to Plaintiff's claims, namely the Plaintiff's purchase and use of the product, occurred in this District, given that the distribution and sale of the defective product occurred within this District.

## FACTUAL ALLEGATIONS

18. Plaintiff purchased an Astro AI minifridge with Model number LY0204A from Amazon.

19. The Plaintiff purchased the mini-fridge as "new" and used the product as refrigerators are ordinarily used.

20. On June 18, 2025, the CPSC issued a recall for Astro Ai's 4-Litter/6-can mini-fridge.

21. Defendant has received reports of incidents involving the mini-fridge overheating. More specifically, the CPSC reports 70 known incidents of overheating including two fires causing

significant fire damage[3].

22. The Defendant, Astro Ai Corporation, has acknowledged the Recall on its website because of reports to electrical units overheating by some of its consumers[4].

23. The Astro Ai mini-fridge was sold on Amazon and the Defendant's corporate website. Astro Ai Corporation's Website is found at www.astroai.com[5].

24. At this time, the Defendant is not offering a refund. Instead, it is offering a replacement product[6].

25. This Recall is not sufficient in that it requires the Plaintiff to be burdened with additional steps such as contacting the company and abiding by their procedures and disposing of the refrigerator at their own time and expense according to what is required under applicable state law without offering any reimbursement for those efforts.

26. The recalled min-fridge's replacement is not a guaranteed fix as the company does not provide any assurances that the replacement refrigerator will not overheat when used as intended.

27. The recalled mini refrigerators were defective at inception and at the point of sale. As such, plaintiff was deprived of the benefit of the bargain when he paid full price for a defective product posing a fire hazard.

28. Furthermore, he did not bargain for having to dispose of the refrigerator in accordance with applicable state law when purchasing the product at full price from a major retail outlet.

---

[3] https://www.cpsc.gov/Recalls/2025/AstroAI-Recalls-Minifridges-Due-to-Fire-and-Burn-Hazards-Two-Fires-Resulted-in-More-Than-360000-in-Reported-Property-Damages
[4] https://www.astroai.com/latest-statement
[5] https://www.astroai.com/
[6] https://www.astroai.com/product-recall

***Defendants' Misrepresentations and Omissions are Actionable***

29. Plaintiff bargained for a Product that was safe to use. Defendant's Products were, and are, unsafe. As a result of the fire risk while using the mini-fridge, Plaintiff, and all others similarly situated, were deprived the basis of their bargain given that the Defendant sold them a product that would not overheat exposing users and their guests to burn hazards during ordinary use. This dangerous fire risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

30. The Products are not fit for their intended use by humans as they expose consumers to a fire hazard. Plaintiff is further entitled to damages for the injury sustained in being exposed to such danger, damages related to the Defendants' conduct, and injunctive relief.

31. Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for ordinary use due to the risk of catching fire.

32. The Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of catching fire affecting the Products.

33. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Product had they known of the material omissions of material facts regarding the possibility of the Products overheating and catching on fire.

34. Plaintiff bought his mini-fridge for personal use.

35. Plaintiff intended to purchase a Product that would be safe for normal use but instead was sold a dangerous fire hazard.

36. If Plaintiff had been aware of the risk fire in the mini-fridge, they would not have purchased the Product or would have paid significantly less.

37. As a result of the Defendant's actions, Plaintiff has incurred damages.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**All persons within the United States who purchased Astro Ai's 4-Litter/ 6-can Mini Fridge with Model Numbers LY0204A within the statute of limitations**.

39. This Nationwide Class shall be referred to herein as the "Class."

40. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

41. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

42. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

43. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44. The proposed Class is so numerous that the joinder of all members is impracticable.

45. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

46. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process. Preliminary estimates suggest that 249,000 units are subject to recall. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

47. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

48. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all consumers of a defective product posing a fire hazard. Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiff.

49. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff

and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

50. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class a may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

51. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual

questions include, but are not limited to, the following:

a. Whether an electric switch within the mini-fridge is susceptible to short circuiting;

b. Whether Defendant's wrongful retention of Plaintiff and Class Members' payments was an act of conversion;

c. Whether Defendant breached its contract with the Plaintiff by failing to refund Plaintiffs' payments upon the announcement of the recall;

d. Whether Defendant's retention of Plaintiff and Class Members' payments was a violation of Defendant's duty of good faith and fair dealing;

e. Whether Defendant was unjustly enriched as a result of retaining and refusing to refund Plaintiff and Class Members' payments upon the recall announcement;

f. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

g. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT

52. Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

53. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

54. The defendant unjustly retained a benefit to the plaintiff's detriment, and that the retention of the benefit violates the principles of justice, equity, and good conscience.

55. Plaintiff purchased his product online while residing in Illinois and used the product as intended within the state.

56. Plaintiff, and the other members of the Class, conferred a monetary benefit upon Defendant by purchasing the defective mini-fridge either directly or through major online retail outlets. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe and reliable.

57. Defendant voluntarily accepted and retained these benefits. Defendant manufactured, marketed and distributed the defective mini-fridge without adequate warnings of the known defect.

58. The benefit was obtained unlawfully by Defendant distributing a Product prone to having the mini-fridge's electrical switch short circuit causing it to overheat during ordinary use. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

59. The Defendant received revenues from the sales of these defective mini-fridges at the expense of Plaintiff and the Class, who would not have purchased the mini-fridges had they been aware of the defect. The labeling and marketing of the Products by Defendants were misleading and caused direct economic harm and risk of injury to Plaintiff and the Class.

60. Defendant has been unjustly enriched by retaining the revenues derived from the sales of these mini-fridges with defect circuits and wiring systems. Retention of these revenues is inequitable because Defendant failed to disclose the known risks associated with their products, thereby misleading consumers and endangering their safety.

61. Plaintiff and the members of the Classes seek restitution of the monies conferred upon Defendant as a result of their unjust enrichment. Defendant should be required to disgorge the profits obtained from the sale of the mini-fridge equipped with defective electrical switches and, as such, seek restitution to Plaintiff and the Classes, as ordered by the Court.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**

62. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

63. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide (the "Class").

64. Plaintiff and each Member of the Class formed a contract with Defendant at the time they purchased the Products.

65. The terms of the contract included express warranties created by Defendant through affirmative representations, advertising, packaging, labeling, and marketing of the defective 4-Litter/6-Can mini-fridge.

66. In its User Manual, Astro Ai advised having a 1 year limited warranty though the terms of that limitation are not disclosed nor are there any assurances that consumers were even aware of any limitations. Furthermore, the scope of the warranty and its requirements are not disclosed in the User's Manual.

67. Defendant, through these marketing and advertising efforts, expressly warranted that the Products were safe, effective, and fit for their intended purpose. These warranties became part of the basis of the bargain between Plaintiff, Class Members, and Defendant.

68. Defendant made these affirmations of quality and safety through product labeling, packaging, and marketing materials. Defendant reinforced and relied upon these warranties by advertising, displaying, and selling the Products to consumers, thereby making its own express representations of the Products' safety and fitness.

69. Plaintiff and the Class Members fulfilled all conditions precedent to Defendant's liability under this contract, including purchasing the Products in reliance on Defendant's

representations.

70. Defendant breached its express warranties because the Products were defective, prone to having the electrical switch overheat, and presented a serious fire hazard contrary to their representations. The Products failed to conform to the express affirmations and promises made by the Defendant.

71. Plaintiff and Class Members would not have purchased the Products had they known the true nature of the risks, including the potential for fire hazards and burn injuries.

72. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members suffered and continue to suffer financial damages, injury, and economic losses. They are entitled to compensatory damages, attorneys fees, interest, and any other relief deemed appropriate by the Court.

## COUNT III
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

73. Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

74. Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Classes").

75. According to 810 ILCS 5/2-314 a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

76. Defendant is a merchant engaged in the sale of goods, including the defective mini-fridge, to Plaintiff and the Class. On its website, the Defendant promotes a series of consumer

products for sale including multiple mini refrigerators[7].

77. There was a sale of goods from Defendant to Plaintiff and Class Members, thereby establishing a commercial relationship between Defendant and consumers. The Plaintiff purchased his product through Amazon but it is believed you could also purchase the product directly through Astro Ai's website.

78. As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendant impliedly warranted that the Products were merchantable and fit for their intended use.

79. However, contrary to these representations, the Products were defective and unfit for their ordinary use, as they posed a significant risk of having an electrical switch short circuit and cause the product to overheat while being used, which was not disclosed to consumers at the time of sale.

80. Defendant breached the implied warranty of merchantability by selling products that were inherently defective and not suitable for their ordinary and intended purpose. In this case, designing a refrigerator susceptible of overheating during normal and anticipated use renders it unfit for its ordinary purpose.

81. Defendant was on notice of this breach, was aware of adverse health and safety risks caused by the mini-fridge overheating yet failed to take corrective action before selling the Products.

82. Plaintiff and Class Members did not receive the goods as bargained for, as the Products were not merchantable, did not conform to industry standards, and failed to meet the quality and safety expectations of similar goods.

---

[7] https://www.astroai.com/about-us

83. Plaintiff and Class Members are intended beneficiaries of the implied warranties, as they reasonably relied on Defendant's expertise and reputation as merchants when purchasing the Products.

84. Plaintiff and Class Members did not alter the Products, and they used them in the ordinary and intended manner.

85. The Products were defective at the time they left the exclusive control of Defendant, meaning that Defendant bears responsibility for the defect.

86. The Products were defectively designed and/or manufactured, making them unfit for their intended purpose and rendering them non-merchantable under applicable laws.

87. Plaintiff and Class Members purchased the Products without knowing of the latent defect, which was undiscoverable at the time of purchase but existed when the Products left Defendant's control.

88. As a direct and proximate result of the defective Product, Plaintiff and Class Members suffered damages, including, but not limited to, the cost of purchasing the defective Product, loss of use, and other related damages.

89. Defendant attempted to limit or disclaim their implied warranties, but any such disclaimers are unenforceable and void, as a product that poses safety risks cannot be lawfully sold under the implied warranty of merchantability.

90. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class

alleged herein, respectfully request that the Court enter judgment in their favor and against the Defendant as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: November 11, 2025.

Respectfully submitted,

*/s/ Andre R. Belanger*
Andre R. Belanger (Pro Hac Vice)
**Poulin | Willey | Anastopoulo, LLC**
32 Ann Street
Charleston, SC 29403
T: (803) 222 – 2222
E: andre.belanger@poulinwilley.com
cmad@poulinwilley.com

*Attorney for Plaintiffs and the Putative Class*